UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GAITHER S. HARRIS,

Plaintiff,

v.

ACTS SYRENE APARTMENTS,

Defendant.

Case No.  22-cv-00405-JCS

**ORDER TO SHOW CAUSE RE REVIEW UNDER 28 U.S.C. § 1915**

**ORDER DENYING REQUEST FOR APPOINTMENT OF COUNSEL**

Dkt. No. 3

## I.    INTRODUCTION

Plaintiff in this action is proceeding pro se. The Court has granted Plaintiff's application to proceed in forma pauperis and therefore is required to review the sufficiency of Plaintiff's complaint to determine whether it satisfies 28 U.S.C. § 1915(e)(2)(B).  For the reasons set forth below, the Court finds that Plaintiff's claims are insufficiently pled.   Therefore, Plaintiff is ORDERED TO SHOW CAUSE why this case should not be dismissed.  Plaintiff shall file a response to this Order addressing why his claims are sufficiently pled no later than April 15, 2022.  Alternatively, Plaintiff may attempt to cure the deficiencies identified herein by filing an amended complaint by the same date.  For the reasons set forth below, the Court DENIES Plaintiff's request for appointment of counsel without prejudice to Plaintiff renewing the request at a later stage of the case.

## II.    BACKGROUND

### A.    The Complaint

Plaintiff originated this action by filing a form complaint in which he listed as sole defendant "Acts Syrene Apartments."  Complaint at ECF p. 2.  In an attachment, however, he also

United States District Court
Northern District of California

1  requests that he be permitted to name as defendants the Social Security Administration and the

2  Oakland City Attorney, as discussed further below.  Complaint (Attachment) at ECF p. 14-18.  As

3  Plaintiff does not require leave to add defendants named in his original complaint, the Court

4  construes Plaintiff's complaint as asserting claims against these defendants.  In the form

5  complaint, Plaintiff checked boxes indicating that he seeks to assert a civil rights claim under 42

6  U.S.C. § 1983 against "state or local officials" based on "unsafe building/unlawful eviction/

7  defrauded an exercise room[,] entitlement to safety, exercise room, noneviction trips[.]"  *Id.* at

8  ECF p. 3.

9      In an attached "Statement of Claim," Plaintiff states that he is filing this action "because of

10  'write-ups' – with the 'threat of eviction[.]' "  *Id.* (Attachment) at ECF p. 8.  According to

11  Plaintiff, he has lived at Acts Syrene Apartment for four years without a problem but recently, a

12  new worker has begun " 'writing up' residents daily, with threats of eviction."  *Id.* Plaintiff sets

13  forth four "facts."  In "Fact 1," he alleges that Acts Syrene Apartments conducted a ribbon-cutting

14  ceremony "to commit fraud" for an exercise room that "isn't even finished . . . No water/

15  restrooms/ equiptment [sic]."  In "Fact 2," Plaintiff alleges that "most of 'our' fixtures have fallen

16  off;  doorknobs, faucets, cabinets, etc. within  the 1st few months of residency."  *Id.* at ECF pp. 8-

17  9.  Plaintiff further alleges that the "new maintenance man peeps in windows" and "listens outside

18  tenants['] doors."  *Id.*  In "Fact 3," Plaintiff alleges that the apartments have "no hot water" and

19  that he demonstrated this to a building inspector during an inspection that was done "months ago."

20  *Id.* at ECF p. 10.  According to Plaintiff, the inspector ordered a new solar panel for the building

21  because the existing one was too small.  *Id.*  In "Fact 4," Plaintiff alleges that he continued to have

22  no hot water and the new solar panel system still was not complete.  *Id.* at ECF pp. 10-12.  He

23  further alleges that he is being retaliated against "with noise" outside his window, including

24  drilling "for months" while installing an electrical box outside of his window and a maintenance

25  man detailing his car outside Plaintiffs' window.  *Id.* at ECF p. 12.  In addition, he complains that

26  security comes through only once or twice a day, which is not sufficient to protect from "now

27  frequent burglaries" of tenants and mailboxes.  *Id.*

28      With respect to the Social Security Administration, Plaintiff alleges that the Social Security

2

Administration violated its own policies and his Constitutional rights when it "dock[ed] [his] monthly income for almost 1 year" without first holding a "fair hearing[,]" causing "severe hardship[.]" *Id.* at ECF p. 14. According to Plaintiff, he worked as a "temp" for a security agency, National Pro Security, at five or six events over a few years. *Id.* He contends National Pro Security "did not pay [him] anywhere what they claimed, causing 'SSI' to dock [his] pay." *Id.* at ECF pp. 15-16. In fact, he asserts, National Pro Security "never paid [him]." *Id.* at ECF p. 16.

As to the Oakland City Attorney, Plaintiff alleges that he called the Oakland City Attorney and "explain[ed] the situation of [his] building[,]" telling them that the "building is unsafe" but that the City Attorney "ignored it all." *Id.* at ECF p. 18.

In the section of the form complaint addressing relief, Plaintiff states that he wants Defendants to provide "safe housing" – "preferably a HUD foreclosed home" with "front/back yard" in a "good location" – and for the "wrongdoers" to be "lock[ed] up instead of fining them." *Id.* at ECF p. 5. He also seeks $1 million to cover his "pain/ suffering/ hardship[.]" *Id.*

### B. Motions

In addition to his original complaint, Plaintiff has filed seven motions in this action, which the Court summarizes below.

#### 1. Docket No. 3

On January 20, 2022 Plaintiff filed a motion requesting that the Court appoint counsel to help him protect his rights as he is a "disabled [ ] senior" who does not comprehend law. Dkt. No. 3.

#### 2. Docket No. 4

Plaintiff filed a motion dated January 10, 2022 entitled "2nd Motion to Request to Compell [sic] & Add 'SSI' ". In it he alleges that the Social Security Administration has not made his disability payments, which he receives by direct deposit, for two months. He states that two months ago he "called 'SSI' to report lost card, order replacement" and that "for some reason, 'SSI' refuses to pay me my money, claiming 'we're sorry/ call back/ we[']re so-sorry/ call back.[']" *Id.* He states that he has made "numerous calls" explaining the "hardship they create" as he is "disabled/low income/ no extra savings or source to run to." He also alleges that the

Social Security Administration docked his pay last year without a "requested fair hearing."  He attached to this motion a letter from the Social Security Administration reflecting that Plaintiff's monthly Supplemental Security Income payment would be increased to $1040.21 beginning in January 2022, with a handwritten notation that he hadn't "received any money 2 months, and counting . . . ."

### 3.  Docket No. 5

Plaintiff filed a document dated January 20, 2022 entitled "Third Motion to Request to Add SSI/Oakland Attorneys'."   In it he repeats his allegations that he has not received his Social Security disability payments and that he was "docked" last year without a hearing.  He also repeats his allegations that the Oakland City Attorney ignored his complaints about the safety of his building.

### 4.  Docket No. 9

Plaintiff filed a document dated February 9, 2022 entitled "Motion to Request Meet & Greet."  In it, he requests a "Meet & Greet" "to settle/resolve unsafe building [and] to move [him] somewhere safe."

### 5.  Docket No. 10

Plaintiff filed a document dated February 9, 2022 entitled "2nd Motion to Request to Compell [sic] 'SSI' to give Plaintiff 'his' money" with a notation "urgent" next to the caption.  In it, he asks the Court to compel the Social Security Administration to pay him as he cannot pay his bills.

### 6.  Docket No. 11

Plaintiff filed a document dated February 21, 2022 entitled "3rd Motion to Request to Compell [sic] 'SSI' to give me my money!" in which he states that he still has not received his money despite "daily calls" to the Social Security Administration seeking assistance.  According to Plaintiff, he has been told to "call Direct Express" to put " 'my money' on 'my card' " but that " 'SSI has to do that, in which they know." He states that the Social Security Administration has been "running [him] around going on three months" and causing [unnecessary hardship] and that he is "begging everyone, starving, needing housing supplies" and getting "nothing."  He states that

United States District Court
Northern District of California

United States District Court
Northern District of California

instead of paying him, the Social Security Administration sends him "stupid unnecessary documents" and attaches three documents he received from the Social Security Administration in 2021.

### 7. Docket No. 12

Plaintiff filed a document dated February 16, 2022 entitled "Plaintiff's motion to request to file an injunction to move." In it he asks the Court to have him moved to a "4-star hotel" due to the dangerous and unsafe condition of his building.

## III.   ANALYSIS

### A. Legal Standards Under 28 U.S.C. § 1915 and Rule 12(b)(6)

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave to proceed in forma pauperis, courts must engage in screening and dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).

To state a claim for relief, a plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Diaz v. Int'l Longshore and Warehouse Union, Local* 13, 474 F.3d 1202, 1205 (9th Cir. 2007). In determining whether a plaintiff fails to state a claim, the court takes "all allegations of material fact in the complaint as true and construe[s] them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal quotation marks omitted). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 678 (citing

1    *Twombly*, 550 U.S. at 570).

2          Where the complaint has been filed by a pro se plaintiff, courts must "construe the

3    pleadings liberally . . . to afford the petitioner the benefit of any doubt."  *Hebbe v. Pliler*, 627 F.3d

4    338, 342 (9th Cir. 2010).  "A pro se litigant must be given leave to amend his or her complaint

5    unless it is absolutely clear that the deficiencies in the complaint could not be cured by

6    amendment."  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds

7    by statute, as recognized in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc).  Further,

8    when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must

9    provide the litigant with notice of the deficiencies in his complaint in order to ensure that the

10   litigant uses the opportunity to amend effectively."  *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d

11   1258, 1261 (9th Cir. 1992)).  "Without the benefit of a statement of deficiencies, the pro se litigant

12   will likely repeat previous errors."  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th

13   Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

14         **B.     Federal Subject Matter Jurisdiction**

15         Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of*

16   *Am.*, 511 U.S. 375, 377 (1994).  Accordingly, "federal courts have a continuing independent

17   obligation to determine whether subject-matter jurisdiction exists" over a given claim.  *Leeson v.*

18   *Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (internal quotation marks

19   and citations omitted).  Two of the most common grounds for federal subject matter jurisdiction

20   are "federal question jurisdiction" under 28 U.S.C. § 1331, which allows federal courts to hear

21   claims arising under federal law, and "diversity jurisdiction" under 28 U.S.C. § 1332(a), which

22   allows federal courts to hear claims arising under state law if the plaintiff and defendants are

23   citizens of different states and the amount in controversy exceeds $75,000.

24         If a court has subject matter jurisdiction over at least one claim based on one of those

25   statutes or some other specific grant of jurisdiction, the court may also exercise supplemental

26   subject matter jurisdiction over "other claims that are so related to claims in the action within such

27   original jurisdiction that they form part of the same case or controversy under Article III of the

28   United States Constitution."  28 U.S.C. § 1367(a).  In determining whether claims are sufficiently

United States District Court
Northern District of California

6

1   related to meet that test, courts look to whether they share a "'common nucleus of operative fact.'"

2   *See Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1173–74 (9th Cir. 2002) (quoting *United Mine*

3   *Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

4   **C.    Discussion**

5   **1.   Claims Against the Social Security Administration**

6   In the Complaint, Plaintiff asserts a claim on the ground that the Social Security

7   Administration improperly "docked" his Supplemental Security Income ("SSI") disability benefits

8   based on earnings that were reported by an employer, National Pro Security, before affording him

9   a "fair hearing."   In his subsequent motions, Plaintiff also seeks to add a claim based on the Social

10  Security Administration's alleged ongoing failure to pay his SSI beginning in January of 2022.

11  The Court addresses both claims.

12  Section 405(g) of the Social Security Act "sets the terms of judicial review" for benefits

13  awarded under the SSI program (Title XVI).  *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). In

14  particular, it provides, in relevant part, that "[a]ny individual, after any *final decision* of the

15  Commissioner of Social Security made after a hearing to which he was a party, irrespective of the

16  amount in controversy, may obtain a review of such decision by a civil action commenced within

17  sixty days after the mailing to him of notice of such decision or within such further time as the

18  Commissioner of Social Security may allow."  42 U.S.C. § 405(g) (emphasis added).  The final

19  decision requirement has two elements. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976).  The first

20  "is the requirement that a claim for benefits shall have been presented to the Secretary" and is

21  "purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular

22  case."  *Id.*  The second "is the requirement that the administrative remedies prescribed by the

23  Secretary be exhausted[,]" and that requirement is waivable.  *Id.*

24  "Ordinarily, the Secretary has discretion to decide when to waive the exhaustion

25  requirement."  *Bowen v. City of New York*, 476 U.S. 467, 483 (1986).  However, " 'cases may

26  arise where a claimant's interest in having a particular issue resolved promptly is so great that

27  deference to the agency's judgment is inappropriate.' "  *Id.* (quoting *Mathews v.* Eldridge, 424 U.S.

28  at 330).  The Ninth Circuit has held that a court may waive the exhaustion requirement where the

1    claim to be reviewed is "(1) collateral to a substantive claim of entitlement (collaterality), (2)

2    colorable in its showing that refusal to the relief sought will cause an injury which retroactive

3    payments cannot remedy (irreparability), and (3) one whose resolution would not serve the

4    purposes of exhaustion (futility)." *Briggs v. Sullivan*, 886 F.2d 1132, 1139 (9th Cir.1989) (citing

5    Eldridge, 424 U.S. at 330) (internal quotations omitted). All three elements must be met. See

6    *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1115–16 (9th Cir.2003).

7           With respect to Plaintiff's claim that his SSI payments were "docked" before he received a

8    fair hearing, the Court finds that Plaintiff has included sufficient allegations with respect to the

9    *non-jurisdictional* requirements for judicial waiver of administrative exhaustion to satisfy the

10   Court's limited review under 28 U.S.C. § 1915. This conclusion is without prejudice to any

11   argument the Social Security Administration may make if the Court orders service of Plaintiff's

12   complaint following amendment.

13          First, Plaintiff's claim that his payments were "docked" without a predetermination

14   hearing, violating his Constitutional rights, is collateral to his claim for benefits.  *See Mathews v.*

15   *Eldridge*, 424 U.S. at 330–32 (holding that claim to a predeprivation hearing was entirely

16   collateral to substantive claim of entitlement to social security benefits).

17          Second, Plaintiff has colorably alleged irreparability by alleging that he is disabled and

18   entirely dependent on his SSI payments. *See Johnson v. Shalala*, 2 F.3d 918, 922 (9th Cir. 1993)

19   ("economic hardship suffered by the plaintiffs while awaiting administrative review constitutes

20   irreparable injury").

21          Finally, Plaintiff has colorably alleged futility.  The Ninth Circuit has held that a claimant

22   can demonstrate futility by showing that "[r]equiring him to exhaust administrative remedies

23   would not serve the policies underlying exhaustion." *Briggs*, 886 F.2d at 1140 (quoting *Cassim v.*

24   *Bowen*, 824 F.2d 791, 795 (9th Cir.1987)). Where a constitutional due process claim is alleged, it

25   has found that this requirement is met because there is " 'nothing to be gained from permitting the

26   compilation of a detailed factual record, or from agency expertise.' "  *Cassim v. Bowen*, 824 F.2d

27   791, 795 (9th Cir. 1987) (quoting *Bowen v. City of New York*, 476 U.S. at 483).  To the extent that

28   Plaintiff's claim is based on the allegation that his constitutional rights were violated by the failure

8

1    to afford him a predeprivation hearing before "docking" his payments, it is the sort of "simple and

2    straightforward" claim that the Ninth Circuit has found meets the futility requirement.  *See*

3    *Briggs*, 886 F.2d at 1140.

4         The allegations in Plaintiff's complaint are not, however, sufficient to show that Plaintiff

5    has met the presentment requirement as to this claim, which is a prerequisite to federal

6    jurisdiction.  One way to satisfy the presentment requirement is by requesting reconsideration of

7    an initial determination.  *See Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522

8    (1975) (nonwaivable element satisfied where plaintiff presented claim for benefits to the district

9    office and, upon denial, to the Regional Office for reconsideration).  One type of "initial

10   determination" is a determination that a recipient's benefit amount is subject to a deduction "on

11   account of work." 20 C.F.R. § 404.902(f);  *see also* 20 C.F.R. § 404.902 ("Initial determinations

12   are the determinations [Social Security Administration] make[s] that are subject to administrative

13   and judicial review"). A claim can be presented in other ways as well.  For example, in *Mathews v.*

14   *Eldgridge*, the court found that this requirement was satisfied because the plaintiff had completed

15   a questionnaire from the state agency responding to questions about his continuing disability, and

16   he had sent a letter to the Social Security Administration in response to the tentative determination

17   that his disability had ceased in which he "specifically presented the claim that his benefits should

18   not be terminated because he was still disabled."   424 U.S. at 329.

19        Because Plaintiff has not included any allegations in his Complaint reflecting that he

20   presented his claim to the Social Security Administration before initiating this action, the Court

21   does not have jurisdiction over this claim as currently pled.

22        To the extent Plaintiff seeks to amend his complaint to assert an additional claim against

23   the Social Security Administration to compel it to pay his unpaid SSI benefits for 2022, that claim

24   also is insufficiently pled. As this claim is not based on any final agency decision, this claim

25   appears to be a petition for writ of mandamus under 28 U.S.C. § 1361 (providing that "[t]he

26   district courts shall have original jurisdiction of any action in the nature of mandamus to compel

27   an officer or employee of the United States or any agency thereof to perform a duty owed to the

28   plaintiff.")  "The Supreme Court has noted that in certain circumstances, mandamus jurisdiction

United States District Court
Northern District of California

may be available in Social Security cases against the Commissioner." *Laurie Q. v. Callahan*, 973 F. Supp. 925, 933 (N.D. Cal. 1997) (citing *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984); *Briggs v. Sullivan*, 886 F.2d 1132, 1142 (9th Cir. 1989) (confirming that Ninth Circuit caselaw holds that mandamus may lie against the Commissioner.)  However, " '[m]andamus is an "extraordinary remedy," ' " *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1998), that 'is available only when "(1) the plaintiff's claim is clear and certain; (2) the duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." ' " *Lowry v. Barnhart*, 329 F.3d 1019, 1021 (9th Cir. 2003) (quoting *Or. Natural Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995))."  *Johnson v. Saul*, No. 20-CV-747 JLS (AHG), 2021 WL 242967, at *10 (S.D. Cal. Jan. 25, 2021), reconsideration denied, No. 20-CV-747 JLS (AHG), 2021 WL 1263955 (S.D. Cal. Apr. 6, 2021).

Here, Plaintiff has colorably alleged that the second requirement for mandamus relief is met to the extent that he alleges that he has already been found to be disabled and told by the Social Security Administration that his benefit amount for 2022 is $1040 a month, which is the amount he seeks to have paid to him.  Thus, payment of that amount to Plaintiff does not appear to involve an exercise of discretion on the part of the Social Security Administration.  On the other hand, the first and third requirements are not met.  First, Plaintiff's claim is not "clear and certain." Although he alleges the Social Security Administration refuses to pay him, the specific allegations in his various submissions in this case are murky.  Rather than alleging that anyone has actually told him he is not entitled to benefits, it appears that Plaintiff's failure to receive benefits relates to problems with a Direct Express card and that Social Security Administration employees with whom he has spoken have given him instructions that he believes are incorrect.  The Court also finds that Plaintiff has not alleged facts establishing that no other adequate remedy is available. The Social Security Act and associated regulations establish administrative procedures for investigating claims related to payment of disability benefits and providing claimants an opportunity to be heard.  42 U.S.C. § 1383(c); *Laurie Q. v. Callahan*, 973 F. Supp. 925, 933 (N.D. Cal. 1997) (finding no mandamus jurisdiction on claim asserted under Social Security Act because there were "ample" opportunities to appeal administrative determination).   Plaintiff's allegations

10

are insufficient to show that he will be unable to obtain relief through the administrative procedures established by the Social Security Administration.  Therefore, Plaintiff has not adequately alleged a claim for mandamus relief as to the Social Security Administration's failure to pay his SSI benefits in 2022.

### 2. Claims Against Acts Syrene Apartment

Plaintiff seeks to assert claims against his landlord, Acts Syrene Apartments, on the basis of its alleged failure to meet acceptable health and safety standards.  He invokes 42 U.S.C. § 1983 in his complaint but that claim is insufficiently pled for two reasons.  First, because Section 1983 merely provides a vehicle by which individuals may vindicate "federal rights elsewhere conferred," *Albright v. Oliver*, 510 U.S. 266, 270, Plaintiff must identify a federal Constitutional right or a federal statute he claims has been violated.  He has not done so.

Second, a claim under Section 1983 may only be asserted against a state actor and as a general rule, a private landlord is not a state actor.  *See Reyes-Garay v. Integrand Assur. Co*., 818 F. Supp. 2d 414, 434 (D.P.R. 2011) (dismissing Section 1983 claim against landlord where plaintiff participated in  tenant-based Section 8 housing program[1] on the basis that the landlord was "clearly a private entity" even though it contracted with the state to provide Section 8 housing);  *see also Espino v. Winn Residential*, No. 18-CV-02729-JCS, 2018 WL 4774959, at *8 (N.D. Cal. July 27, 2018), report and recommendation adopted, No. C 18-02729 JSW, 2018 WL 4775601 (N.D. Cal. Aug. 21, 2018) ("The undersigned agrees with the court in *Reyes-Garay* that a due process claim cannot be asserted against a private landlord who provides housing to participants in the Housing Choice Voucher Program.").  Although there is some authority suggesting that the owner of a project-based section 8 housing development might be considered a state actor for the purposes of Section 1983, *see Greene v. Carson*, 256 F. Supp. 3d 411, 426-429 (S.D.N.Y. 2017) (allowing the plaintiff's due process claims against HUD and the owner of a

---

[1]There are "two forms of section 8 housing: 'tenant-based' and 'project-based.' In tenant-based housing, an assisted family selects their home and their assistance[ ] travels with them should they move. In project-based housing, rental assistance is provided to families who live in designated developments or units." *Valentine Props. Assocs., LP v. U.S. Dep't of Hous. & Urban Dev*., 785 F.Supp.2d 357, 364 (S.D.N.Y. 2011) (citation omitted) (citing 24 C.F.R. § 982.1(b)).

1    project-based Section 8 low income housing development to proceed), vacated on other grounds,

2    2018 WL 5260598, 2nd Cir., Oct. 11, 2018; *Coley v. Brook Sharp Realty LLC*, No. 13-7527

3    (LAP), 2015 WL 5854015, at *13–14 (S.D.N.Y. Sep. 25, 2015) (considering the plaintiff's

4    substantive and procedural due process claims against the owner of a project-based Section 8 low

5    income housing development), there are no allegations in the Complaint that Acts Syrene

6    Apartments is the owner of project-based Section 8 housing or that Plaintiff's apartment is

7    provided to him under such a program.

8            Finally, the Court notes that while Section 8 of the Housing Act of 1937 requires

9    participating landlords to undergo regular inspections and maintain standards for safe and

10   habitable housing, *see* 42 U.S.C. § 1437f, there is no private right of action on the part of tenants

11   to enforce those provisions. *Reyes-Garay v. Integrand Assur. Co*., 818 F. Supp. 2d at 431

12   ("Simply we cannot find that Congress intended to create a private right of action under [the

13   Housing Act]".).[2]

### 3.  Claims Against the Oakland City Attorney

15           Plaintiff claims that the Oakland City Attorney should have taken action on his behalf to

16   remedy the problems he has been experiencing with respect to the safety and habitability of his

17   apartment.  To the extent Plaintiff seeks to assert this claim under 42 U.S.C. § 1983, he fails to

18

19   _____

[2] While the Court has addressed here only claims that Plaintiff may be attempting to assert under
20   federal Law, Plaintiff may have viable statutory and common law claims under California law,
which affords various remedies to tenants whose landlords do not meet safety and habitability
21   standards.  *See, e.g., Erlach v. Sierra Asset Servicing, LLC*, 226 Cal. App. 4th 1281, 1298 (2014)
(describing remedies available under California Civil Code section 1942.4 as well as common law
22   claims such as breach of the implied warranty of habitability and intentional infliction of
emotional distress).  Such claims, however, could only be asserted in this action if the Court were
23   to find that it is authorized to exercise supplemental federal jurisdiction over them under 28 U.S.C.
§ 1367 and that exercising supplemental jurisdiction is in the interest of judicial economy,
24   convenience, fairness and comity. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–
73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). As explained above, Section 1367 allows Courts to
25   exercise supplemental jurisdiction  over "all other claims that are so related to claims in the action
within such original jurisdiction that they form part of the same case or controversy under Article
26   III of the United States Constitution."  As Plaintiff has not asserted any viable federal claims
related to the alleged failure to provide safe and habitable housing, it is unlikely that this Court
27   will be authorized to exercise supplemental jurisdiction over any state law claims he seeks to
assert on those grounds even assuming he is able to remedy his claims against the Social Security
28   Administration by amending his complaint.  Rather, the proper venue for such claims is California
state court.

state a claim because he has not cited to any particular statute or constitutional right that he alleges was violated.  Further, to the extent he bases his claim on a purported obligation to pursue criminal charges against the apartment owner or anyone else, that claim is likely barred by the doctrine of prosecutorial immunity, a common law doctrine that also applies to Section 1983 claims.  *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976);  *see also Cook v. Ellison*, 178 F.3d 1299 (9th Cir. 1999) (to "protect the independent judgment of prosecutors, an official is absolutely immune from suit when 'performing functions that require the exercise of prosecutorial discretion[,]'" including  the prosecutor's decision to file charges) (citation omitted). Therefore, Plaintiff fails to state a claim against the Oakland City Attorney.

### 4.  Appointment of Counsel

Under 28 U.S.C. § 1915(e)(1), this Court is authorized to appoint an attorney to represent any person unable to afford counsel only under "exceptional circumstances." 28 U.S.C § 1915(e)(1); *United States v. Madden*, 352 F.2d 792, 794 (9th Cir. 1965).  Thus, to appoint counsel under this section, the Court must find that a party is unable to afford counsel, that is, that he or she qualifies for in forma pauperis status, and that he or she meets the "exceptional circumstances" requirement.  "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'"  *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)).  However, "[n]either of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel under section 1915(d).[3]"  *Id.*

This Court has already found that Plaintiff qualifies for in forma pauperis status, satisfying the financial need aspect of the Court's analysis.  Therefore, the remaining and dispositive question regarding Plaintiff's motion for appointment of counsel is whether there are "exceptional circumstances" to warrant the appointment of counsel.   Plaintiff has not stated any viable claims and the Court is unable to determine whether he is likely to succeed on the merits upon

---

[3] While *Wilborn* cites to requests for counsel under "Section 1915(d)", the 1996 amendments to this section redesignated former subsection (d) as subsection (e).  H.R. 3019, 104th Cong. (1996).

United States District Court
Northern District of California

amendment of his complaint.  Because the Court finds no exceptional circumstances that warrant appointment of counsel at this stage of the case, Plaintiff's request for appointment of counsel is denied without prejudice to renewing his request at a later stage of the case.

## IV.     CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff has failed to state any viable claim. Plaintiff shall file a response to this Order addressing why his claims are sufficiently pled no later than **April 15, 2022**.  Alternatively, Plaintiff may attempt to cure the deficiencies identified herein by filing an amended complaint by the same date.  Any amended complaint must include the caption and civil case number used in this order (22-cv-0405) and the words FIRST AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the previous complaint, any amendment may not incorporate claims or allegations of Plaintiff's original complaint by reference, but instead must include all of the facts and claims Plaintiff wishes to present and all of the defendants he wishes to sue. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

Plaintiff is encouraged to contact the Federal Pro Bono Project's Pro Se Help Desk for assistance as he continues to pursue this case. Lawyers at the Help Desk can provide basic assistance to parties representing themselves but cannot provide legal representation. Although in-person appointments are not currently available due to the COVID-19 public health emergency, Plaintiff may contact the Help Desk at (415) 782-8982 or FedPro@sfbar.org to schedule a telephonic appointment.

**IT IS SO ORDERED.**


Dated:  March 13, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California